

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00073-CV

IN THE INTEREST OF K.M., A CHILD,

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 72465L1, Honorable Jack M. Graham, Presiding

May 21, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

"Christy," the fictitious name we will use for the biological mother of K.M., appeals the trial court's judgment terminating her parental rights.[1] She contends that the evidence was insufficient to support the trial court's finding that termination of her parental rights was in K.M.'s best interest. We affirm.

*Authority*

The Texas Family Code allows a court to terminate the relationship between a parent and a child if the party seeking termination establishes (1) one or more acts or omissions enumerated under § 161.001(b)(1) and (2) termination of that relationship is in

---

[1] K.M.'s biological father executed his Affidavit of Voluntary Relinquishment of Parental Rights. He does not appeal the trial court's termination of his parental rights.

the child's best interest. *In re H.W.*, No. 07-16-00294-CV, 2016 Tex. App. LEXIS 12846, at *4 (Tex. App.—Amarillo Dec. 5, 2016, no pet.) (mem. op.); *see* TEX. FAM. CODE ANN. § 161.001(b)(1)–(2) (West Supp. 2018). Both elements must be established by "clear and convincing evidence." *See In re H.W.*, 2016 Tex. App. LEXIS 12846, at *4. That standard is met when the evidence of record "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at *5. In reviewing whether the evidence is sufficient to do that, we apply the tests described in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6–8 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). And, in applying those tests to the finding of best interest, we compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[2]

*Application*

The trial court found that the evidence established three statutory grounds warranting termination. Two related grounds involved Christy (1) knowingly placing or knowingly allowing K.M. to remain in conditions or surroundings that endangered K.M.'s physical or emotional well-being and (2) engaging in conduct or knowingly placing K.M. with persons who engaged in conduct that endangered K.M.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The trial court also found by

---

[2] The *Holley* factors are as follows: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parent seeking custody; (5) the programs available to assist the parent; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley*, 544 S.W.2d at 372. Furthermore, the evidence need not establish that all the *Holley* factors support the conclusion that termination is in the child's best interest, and the absence of evidence of some factors does not preclude the fact-finder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

clear and convincing evidence that Christy failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child. *See id.* § 161.001(b)(1)(O). Those findings are not attacked on appeal. Moreover, the evidence upon which they are based may be considered when determining whether the best interest of the child warranted termination. *See In re C.H.*, 89 S.W.3d at 28.

The record contains the following evidence. The Texas Department of Family and Protective Services (the Department) became involved with the family in July 2016, after it received reports that K.M. was in the care of known drug users and sellers, giving the Department reason to believe that K.M. was neglectfully supervised and prompting the Department to begin family support services. Shortly thereafter, in August 2016, K.M. tested positive for cocaine. Approximately one year later, in August 2017, the Department removed K.M. from Christy's custody when K.M. again tested positive for cocaine.

We also learn from the record that Christy has a history of involving herself in abusive relationships. There were allegations that K.M.'s biological father was violent toward Christy. During the course of the case, Christy began a relationship with another partner, with whom Christy attended counseling. When that relationship turned violent, Christy turned to the Department, which responded with a safety plan that ordered that Christy and K.M. have no contact with the then-former partner. Christy nonetheless reconciled with her partner after recanting her allegations of violence. This resulted in exposing K.M. to contact with the partner. Eventually, Christy resumed her relationship with K.M.'s biological father, despite the prior allegations about his violence directed at her. Initially, she denied both reconciliations but, when confronted with social media

3

information, she admitted that she had returned to her abusive partners. In December 2018, K.M.'s biological father tested positive for cocaine.

Christy repeatedly left K.M. and K.M.'s infant brother, who is the subject of a separate proceeding, in the care of her mother. The latter had a continuing history of drug abuse and tested positive for methamphetamine, even after purportedly completing rehabilitation. K.M.'s infant brother, who had also been left in his maternal grandmother's care, also tested positive for methamphetamine approximately one year after K.M.'s removal. This resulted in the removal of the younger child and also evinced Christy's penchant for poor decisions regarding care of her children. Christy's counselor also testified about Christy regressing, returning to her previously abusive partners, and continuing to leave the children with caretakers who use drugs. It is the chaos associated with abusive relationships, reconciliations, the drug usage, and instability that, the counselor explained, is detrimental to a child's development and sense of well-being. Indeed, continued exposure to domestic violence and drug abuse are circumstances supporting a trial court's determination that termination of the parent-child relationship is in the child's best interest. *See In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.).

It may be that Christy completed most of the ordered services. Yet, per the record, she failed to demonstrate real progress from those services and make the necessary changes in her life that would positively impact her children. As a Department caseworker explained, "we'd see her fall back into the same patterns pretty quickly" after she appeared to be working services. So too did the record reveal her penchant for continually exposing the children to others who could not remain drug free.

4

Further, as noted, K.M.'s biological father relinquished his parental rights to K.M. By Christy's own admission on this matter, she maintains that even though K.M. may not have been able to live with her—because she was living with K.M.'s biological father as of the date of trial—she could maintain visitation with K.M. and "could still visit with the child, provide the child with food and clothing, and meet the emotional need of the child during her possession." This observation, however, disregards K.M.'s need for stability and permanence in his life.

The record indicates that Christy and K.M. loved one another and were bonded. Nonetheless, we consider and recognize the love a child has for his mother but cannot permit that natural bond to continue to undermine the child's best interest:

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

*In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.).

Based on the record before us, we find clear and convincing evidence to support the trial court's finding that the child's best interests would be served by terminating Christy's parental rights. According the trial court's judgment terminating her parental rights to K.M. is affirmed.

Per Curiam

5